FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

16 OCT -3 PM 2:05

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY CLERK

VERSATA SOFTWARE, INC. and
VERSATA DEVELOPMENT GROUP,
INC.,
        Plaintiffs,

-vs-

ZOHO CORPORATION,
        Defendant.

CAUSE NO.:
A-13-CA-00371-SS

## ORDER

BE IT REMEMBERED on the 28th day of September 2016, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendant Zoho Corporation (Zoho)'s Motion for Summary Judgment [#157], Plaintiffs Versata Software, Inc. and Versata Development Group, Inc. (collectively, Versata)'s Response [#188] in opposition, Zoho's Reply [#185] in support, Versata's Surreply [#192] in opposition, Zoho's Sur-surreply [#195] in support, and Zoho's Notice of Supplemental Authority [#199]. Having reviewed the documents, the arguments of the parties at the hearing, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

I.    **Patent-in-suit**

This case involves claims for infringement of United States Patent Number 7,092,740 (the '740 Patent), which was issued in 2006 and is titled "High Density Information Presentation Using Space-Constrained Display Device."[1] The '740 Patent describes a method for presenting

---

[1] Versata originally sued Zoho for infringement of United States Patent No. 6,907,414 ('414 patent) and United States Patent No. 6,834,282 ('282 Patent), in addition to the '740 Patent. Following the Special Master's

information on a "space-constrained display of a portable device." The goal of the '740 Patent's innovation is to allow a relatively large amount of data about particular external states to be easily monitored on mobile devices and for the information to be digested by the user at a glance. The patent explains that as use of mobile phones and other portable information devices have become more pervasive,

> so too have the demands for rich information content. While the size, resolution and flexibility of displays employed by such devices have improved dramatically, space-constraints are inevitable. Unfortunately, space-constraints limit the richness of information content available to a user. . . . The display paradigms [previously] employed have typically been based on text-based links and sparse graphics that attempt to reproduce on the phone, in dramatically scaled down form, the presentation of a typical web page. Unfortunately, the size of such display screens (often as small as 4 lines of text with 15 character width) are wholly inadequate for such displays.

Compl. [#1-3] Ex. 3 ('740 Patent) at col. 1 ll. 15–31.

The '740 Patent proposes a solution to this problem by allowing users to select only the information they wish to see on their device, and permitting the users to represent that information using a compact graphical representation. For example, a user might want to remotely monitor the central processing unit (CPU) load on a critical server at any given time. The '740 Patent's technology would allow the user to easily view and understand different indications of that state. Different colors might be used as indications of the monitored state: green if load is less than 50%, yellow if load is between 50% and 75%, and red if load exceeds 75%. The '740 Patent also allows a user to set up the system so information related to the monitored server is sent to one or more mobile devices and displayed compactly using the user-configured indicators in the display. Some of the claims of the '740 Patent cover displays combining graphical and textual representations while other claims cover displaying the data in

---

construction of claim terms from the '414 Patent and '282 Patent, the parties stipulated to Zoho's non-infringement of the '414 Patent and the '282 Patent. Joint Mot. [#90]; Order of Mar. 19, 2015 [#91]. The parties agreed at the hearing Zoho's motion for summary judgment on the '740 Patent is case dispositive.

two-dimensional arrays. All of the claims incorporate the term "space-constrained display of a portable device."

## II. Procedural History

The dispute between the parties arose when Zoho began making and selling software known as ManageEngine Applications Manager, ManageEngine Applications Manager for iPhone, and ManageEngine OpManager, which Versata, the assignee of the '740 Patent, claims infringes its patent. On May 28, 2014, the Court, through Special Master Karl Bayer, held a *Markman* hearing in this case. On July 31, 2014, the Court held a supplemental *Markman* hearing on the disputed indefiniteness of two claim terms in light of the United States Supreme Court's decision in *Nautilus v. Biosig Instruments Inc.*, 134 S. Ct. 2120 (2014). The Special Master issued his Report and Recommendation on claim construction on September 26, 2014. R. & R. [#81]. On January 15, 2015, this Court entered its claim construction order accepting the Special Master's recommended constructions, with two modifications relating to the '740 Patent. Order of Jan. 15, 2015 [#88].

Zoho filed a motion for summary judgment on July 21, 2015, arguing the '740 Patent is invalid because it claims an abstract idea in violation of *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). *See* First Mot. Summ. J. [#93] at 7. The Court, in denying Zoho's motion for summary judgment, concluded the '740 Patent did not embody an impermissibly abstract idea and therefore did not address whether the claims at issue contain an inventive concept sufficient to transform the allegedly abstract idea into patent-eligible subject matter. Order of Oct. 26, 2015 [#101].

On August 12, 2016, Zoho filed a second motion for summary judgment, this time arguing the asserted claims of the '740 Patent are invalid for indefiniteness because they fail to

"particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." *See* Second Mot. Summ. J. [#157] at 5 (quoting 35 U.S.C. § 112, ¶ 2). Specifically, Zoho contends the term "space-constrained display" is indefinite. In the alternative, Zoho argues either it did not infringe the '740 Patent or the patent is invalid for obviousness. The parties fully briefed the motion, and it is now ripe for the Court's consideration.

## Analysis

### I.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are

insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

Zoho asserts the following arguments in support of its motion for summary judgment: (1) the asserted claims are invalid because the term "space-constrained display" is indefinite; (2) even if the asserted claims are not indefinite, Zoho does not infringe; and (3) in the alternative, the asserted claims are invalid as obvious in light of AdventNet Web NMS MSP Edition (AdventNet), the software predecessor to Zoho's accused products. Because the Court finds the term "space-constrained display" indefinite, it does not reach Zoho's remaining two arguments.

A. **Zoho's Indefiniteness Argument Presents a Claim Construction Dispute that is Properly Considered on Summary Judgment.**

Before reaching the merits of Zoho's summary judgment motion, the Court first addresses Versata's argument that Zoho's motion is untimely and without good cause. According to Versata, Zoho had the opportunity to argue the indefiniteness of the term "space-constrained display" as part of its claim construction briefing, but failed to do so. Given that this Court held two *Markman* hearings in this case over two years ago—one for the sole purpose of determining whether certain terms were indefinite—Versata maintains Zoho's request to reopen claim construction on the eve of trial is untimely and without good cause.

However, the deadline for filing dispositive motions was August 14, 2016, and Zoho timely filed its second motion for summary judgment on August 12, 2016. *See* Order of Feb. 20, 2015 [#89] at 2; Second Mot. Summ. J. [#157]. Nothing in the law confines a party's indefiniteness argument to the claim construction stage of the litigation. *See, e.g.*, *Conoco, Inc. v. Energy & Envtl, Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) ("[A] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order. We have recognized that district courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.") (internal quotation marks omitted); *Apple, Inc. v. Samsung Elecs. Co.*, 932 F. Supp. 2d 1076, 1079 (N.D. Cal. 2013) ("[F]ailure to seek construction of a term during claim construction does not constitute waiver of an indefiniteness argument."); *Indus. Tech. Research Inst. v. LG Elecs. Inc.*, No. 3:13-CV-2016-GPC-WVG, 2014 WL 6907449, at *2 (S.D. Cal. Dec. 8, 2014) ("[T]he Federal Circuit's statements that indefiniteness is intertwined with claim construction mean only that the Court must attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness, and not that the Court must

determine indefiniteness during the claim construction proceedings."). Indeed, case law reveals courts often address indefiniteness at the summary judgment stage. *See, e.g., Nautilus*, 134 S. Ct. at 2124 (addressing appeal from grant of summary judgment based on indefiniteness); *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005) (same), *abrogated by Nautilus*, 134 S. Ct. at 2124; *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1331 (Fed. Cir. 2014) (affirming the district court's summary judgment holding that the asserted claim was invalid for indefiniteness). In light of the foregoing, the Court finds it is both appropriate and necessary to address Zoho's indefiniteness argument on summary judgment.

**B.      The Asserted Claims in the '740 Patent are Invalid for Indefiniteness.**

Zoho alleges the asserted claims—all of which incorporate the term "space-constrained display"—are invalid because the term "space-constrained display" is indefinite. Section 112 requires a patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112, ¶ 2. The standard for "indefiniteness" is whether "[the] claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 134 S. Ct. at 2124. Indefiniteness is measured from the viewpoint of a skilled artisan at the time the patent was filed. *Id.* at 2128. It must be proven by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (stating invalidity defenses must be proved by clear and convincing evidence); *Intel Corp. v. VIA Technologies, Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003).

In *Nautilus*, the United States Supreme Court described the "delicate balance" Section 112 requires: "[o]n the one hand, the definiteness requirement must take into account the

inherent limitations of language. Some modicum of uncertainty, the Court has recognized, is the 'price of ensuring the appropriate incentives for innovation.'" 134 S. Ct. at 2128. "At the same time, a patent must be precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Id.* at 2123 (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 379, 373 (1996)). Otherwise, "there would be '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.'" *Id.* at 2129 (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)).

Similarly, in interpreting Section 112's indefiniteness requirement, the Federal Circuit stated, "[t]he scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention. Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention." *Datamize*, 417 F.3d at 1350. The court reasoned that "[r]eference to undefined [subjective] standards, regardless of whose views might influence the formation of those standards, fails to provide any direction to one skilled in the art attempting to determine the scope of the claimed invention." *Id.* at 1352.

Notably, the Supreme Court abrogated *Datamize* in *Nautilus*, concluding *Datamize*'s more difficult framework for determining indefiniteness—where only claims "not amendable to construction" or "insolubly ambiguous" are indefinite—was too uncertain. *Nautilus*, 134 S. Ct. at 2130. The Supreme Court noted, however, that the Federal Circuit's fuller explanation of the term "insolubly ambiguous" may "come closer to tracking [Section 112, ¶ 2] statutory prescription." *Id.* at 2130. Although *Datamize* was determined under the more difficult pre-*Nautilus* framework for finding indefiniteness, the Court nevertheless finds it instructive, as its reasoning comports with the test for indefiniteness established in *Nautilus*. That is, "claim

language that fails to provide an objective standard for determining the scope of the invention and instead relies on the unrestrained, subjective opinion of the person practicing the invention would be language that fails to provide a person skilled in the art with reasonable certainty as to the scope of the invention." *Prolifiq Software Inc. v. Veeva Sys., Inc.*, No. C 13-03644 SI, 2014 WL 3870016, at *5 (N.D. Cal. Aug. 6, 2014) (likewise finding *Datamize* instructive).

In construing a patent, "the language of the claim frames and ultimately resolves all issues of claim interpretation." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). Courts "indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning." *Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). The ordinary and customary meaning of a claim term may be ascertained by reviewing a number of sources, including the claims themselves, other intrinsic evidence such as the specification and the prosecution history, and extrinsic evidence like dictionaries, treatises, and expert testimony. *See id.*; *see also Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1374 (Fed. Cir. 2002).

The Court begins its analysis by recognizing the term "space-constrained display" is one of degree, as it "necessarily calls for a comparison against some baseline." *See Liberty Ammunition, Inc. v. United States*, Nos. 2015-5057, 2015-5061, 2016 WL 4488151, at *5 (Fed. Cir. Aug. 26, 2016). Claims having terms of degree do not fail for indefiniteness if they "'provide objective boundaries for those of skill in the art' when read in light of the specification and the prosecution history." *Id.* (quoting *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370–71 (Fed. Cir. 2014)).

In this case, neither the claims themselves nor the prosecution history provide any insight as to the meaning of the term "space-constrained display." The only description of a "space-

constrained display" in the '740 Patent's specification is provided in an example of "web-enabled mobile phones" with display screens "often as small as 4 lines of text with 15 character width." '740 Patent at col. 1 ll. 21, 30–31. The only illustration of a "space-constrained display" in the '740 Patent is a depiction of a 2001 mobile phone that is approximately fourteen lines of about twenty-six characters. That the specification provides a brief description and examples of "space-constrained display[s] of [] portable device[s]" does not mean the patent provides an objective standard for determining what is meant by the term "space-constrained display." As in *Datamize*, where the Federal Circuit concluded the claims could not be saved simply by providing examples of the items generally found "aesthetically pleasing," providing examples of displays that are commonly considered "space constrained" does not change the subjective nature of the term "space-constrained display." See *Datamize*, 417 F.3d at 1352.

Moreover, a skilled artisan must know "not only what falls inside the scope of the claim term, but also what falls outside of it." See *Prolifiq Software Inc.*, 2014 WL 3870016, at *8. This knowledge establishes the boundaries of the invention. In this case, Versata's expert, Dr. Paul Navratil, conceded not every display of a portable device would be space constrained. Reply [#185-3] Ex. B (Excerpted Navratil Dep.) at 120:18–25, 122:5–123:4. Thus, while the '740 Patent's specification provides examples of when something constitutes a space-constrained display, it fails to provide information about when something is not a space-constrained display. As a result, the specification's examples are "insufficient to show with reasonable certainty the scope of the claims because they provide no information as to what falls outside the boundaries of the claims."[2] See *Prolifiq Software Inc*, 2014 WL 3870016, at *8. The Court therefore finds

---

[2] Versata cites *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010), for the proposition that "general guideline[s] and examples" are sufficient to enable a skilled artisan to determine the scope of the claims. That case is inapposite, however. There, the Federal Circuit reversed a finding of indefiniteness

the intrinsic evidence fails to provide sufficient guidance as to what constitutes a "space-constrained display."

Versata mounts no defense to Zoho's allegation that the term "space-constrained display" is indefinite. Instead, Versata contends the term "space-constrained display" must be read in conjunction with the term "of a portable device," and according to Versata, the conjoined term "space-constrained display of a portable device" is not indefinite. Under Versata's reading of the '740 Patent, an iPad with a hypothetical 60-inch display would be "space constrained," while a laptop with a 12-inch display would not. *See* Second Mot. Summ. J. [#157-3] Ex. 1 (Navratil Dep.) at 72:8–73:3, 138:2–19. Versata maintains this distinction by concluding an iPad is a portable device because it is "of a handheld nature," while a laptop is not. *Id.* at 9:25–10:2.

The Court finds Versata's argument unconvincing. In essence, Versata argues the term "space-constrained display" is necessarily definite because "portable device" is well defined. Even assuming the term "portable" is not "completely subjective," Resp. [#188-2] Ex. 2 (Navratil Decl.) ¶ 6, meaning must be separately given to "space-constrained display." *See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored."). While helpful in identifying the type of device that may be space constrained, the term "portable device" does not supply meaning to the term "space-constrained display." Merely understanding that a portable device may have a "space-constrained display" fails to provide a skilled artisan with any way of determining when a display is space constrained and when it is not.

In support of its argument, Versata maintains a person skilled in the art would reasonably understand the term "space-constrained display of a portable device," because the patent

---

because the patent provided a test for measuring the disputed claim term, in addition to providing specific examples of how to apply that test. *Id.* There is no such test in this case.

discloses several devices using the term "space-constrained display of a portable device." These examples include phones, PDAs, pagers, handheld computers, digital media players, and communications-enabled portable devices. '740 Patent at col. 2 ll. 26–31. As explained above, however, providing examples of portable devices with "space-constrained display[s]" is insufficient to show with reasonable certainty the scope of the claims, because they provide no information as to what falls outside the boundaries of the claims.

In an attempt to define the outer boundaries of the term "space-constrained display," Versata points to expert testimony from Dr. Navratil, who concluded a person skilled in the art at the time the '740 Patent was filed would reasonably understand what is meant by a "space-constrained display of a portable device." Navratil Decl. ¶ 5. In his deposition, Dr. Navratil introduced a four-factor test for determining whether a display is space constrained: (1) display size, (2) display resolution, (3) the amount of information to be displayed, and (4) a user's expectation of what can be displayed. Navratil Dep. at 59:8–16, 147:21–148:2; *see also* Mot. Summ. J. [#157-3] Ex. 3 (Navratil Rebuttal Report) at 47.

Despite the appearance of objectivity, these factors—found nowhere in the '740 Patent—fail to establish any boundary enabling a skilled artisan to distinguish between a display that is space constrained from one that is not. As to the first two factors, Dr. Navratil opined "that what is considered space-constrained has evolved along with the increasing size and resolution of displays." Navratil Rebuttal Report at 47. However, it is well-established that a "claim cannot have different meanings at different times; its meaning must be interpreted as of its effective filing date." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005). Under Dr. Navratil's theory, a skilled artisan could design a display that was neither space constrained nor infringing, but nevertheless face liability for infringement once the technology

"evolve[s]." A claim term cannot be a moving target that changes over time.[3] *See Icon Health & Fitness, Inc. v. Polar Electro Oy*, No. 2015-1891, 2016 WL 4174951, at *6 (Fed. Cir. Aug. 8, 2016).

As to the third factor, Dr. Navratil testified "[a] display becomes increasingly constrained as the amount of data to display increases." Navratil Rebuttal Report at 47. According to Dr. Navratil, the amount of information displayed affects "user experience" and "user use" of the display. Navratil Dep. at 148:16–149:3. Under Dr. Navratil's theory, a screen that displays a large amount of information may be "space constrained" while a screen that displays a small amount of information may not. Thus, whether a certain user is infringing the asserted claims is context-dependent, and a context-dependent infringement determination is likely indefinite. *See Haliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("When a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the [accused product] may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite.").

Finally, Dr. Navratil's fourth factor—a user's expectation of what can be displayed—is wholly subjective. In his report, Dr. Navratil states:

> [A] display of a certain resolution will appear increasingly constrained as technology advances and a user's expectation of what can be displayed increases. As software's graphical richness increases, users will typically require higher resolution displays to fully experience this richness. Any display below this resolution threshold will be perceived as space-constrained.

---

[3] Moreover, although Dr. Navratil identified "display size" as the first factor in his analysis, when asked to apply the four-factor test during his deposition, he admitted display size is irrelevant. Navratil Dep. at 138:2–9 (affirmatively indicating hypothetical iPad Pros with screen displays of 17 inches, 20 inches, 30 inches, and 60 inches would all be space constrained). Dr. Navratil's inability to apply his own four-factor test speaks to the unworkability of Versata's approach. *See Datamize*, 417 F.3d at 1354 ("The inability of the expert to use the parameters he himself identified to determine whether an interface screen is 'aesthetically pleasing' militates against the reasonableness of those parameters as delineating the metes and bounds of the invention.").

Navratil Rebuttal Report at 47.

Dr. Navratil further testified, "a user's expectation of what can be displayed" hinges on whether the user used a keyboard and mouse or her fingers to navigate the touch interface. Navratil Dep. at 59:20–60:18, 72:8–73:3. This distinction—unmoored from the text of the '740 Patent—suggests one user's expectations may be radically different from another user's expectations. Such subjectivity renders the asserted claims indefinite.

### Conclusion

"Space-constrained display," as it is used in the '740 Patent, fails to "particularly point[] out and distinctly claim [] the subject matter which the patentee regards as his invention." *See* 35 U.S.C. § 112, ¶ 2. As a result, Zoho is entitled to summary judgment based on the invalidity of the '740 Patent's claims. The Court does not reach Zoho's remaining arguments regarding non-infringement and obviousness.

Accordingly,

IT IS ORDERED Defendant Zoho Corporation's Motion for Summary Judgment [#157] is GRANTED.

SIGNED this the 3rd day of October 2016.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE